We'll hear argument first this morning in Case 14-770, Bank Markazi v. Peterson. Mr. Lamkin. Thank you, Mr. Chief Justice, and may it please the Court. For nearly 200 years, Congress never enacted a statute that purported to limit its effect to one and only one specified case pending before Article III courts, disclaiming any reach beyond that solitary monetary dispute. Mr. Lamkin, is it one case, I mean, this is a consolidation for purposes of reaching assets, but it's a consolidation of some 19 cases? No, Your Honor, it is not a consolidation of 19 cases. It began when the Peterson plaintiffs filed a turnover action. Other parties were interpleaded. Other parties intervened. But it has been one case with one caption, ruled upon by one judge, with one decision. Is there any other case? Well, the following were three unrelated cases. Pardon? Suppose there were three unrelated cases, but the statute was passed. That's all. Yes. So if Congress had identified three unrelated cases and said that for these unrelated cases Yes, it specifies them by number and so forth. by number, we believe that the result would be the same, that Congress crosses the threshold from legislation to adjudication when it attempts to pass a law which has no effect and no existence apart from specified cases pending before the Court of Appeals. I certainly interrupted Justice Ginsburg, but in the 19 cases here, you don't find that principle? No, Your Honor, there aren't 19 cases here. There is one case here. There was no purposes of executing, but there are 19 judgments involving thousands. That's correct. There are 19 underlying judgments, but only one execution. Are there any in this category, that is, cases litigated to judgment for Terrorist Act, that are not in this package of 19 cases? I don't know whether there are any others where they were denied intervention here. But the point, I think the fundamental point is that no future case that's identically situated, no other case except this one case will be subject to this rule. In fact, if there were 19 cases, Mr. Lampkin, and Congress specified them all. Yes, I think the answer would be the same, would be the same, and that is that when Congress dictates the outcome from a limited category of cases with one liable party, and it's unwilling to make that perspective, you think of the same. I guess what I'm asking is what that means, the limited category. Is the number irrelevant if Congress specifies them? I mean, Congress could specify 100, Congress could specify. I think it would be. And Congress is not willing to make the law applicable generally to categories of cases, but singles out particular pending cases to alter the course of proceedings. Alito, is it the use of the case name in the or the number in the statute that is the offending characteristic? I imagine that a creative drafter could draft a statute that makes no reference to a particular case or to particular cases, but could put so many limitations on the scope of the law that in fact it applies only to one case or to a small number of cases, exactly the ones that Congress wants to target. If Congress does that, is it different? Right. I think, Your Honor, if Congress so limits and so cabins it that in effect it has limited the law to one and one case only, it's inexplicable except as an effort to limit it to one case and one case only. That would fall within our rule as well. And the principle underlying that is that Congress enacts laws. It doesn't adjudicate specific cases. Scalia, we had a case, I don't remember the case name, I think it dealt with Lampf, which in which our Court had come to a surprise decision which shortened what everybody thought had been the statute of limitations for certain securities actions. Congress passed a law trying to reverse our decision. It said anybody who had filed the security action prior to the date of this decision would be allowed to refile and proceed to judgment. We went through a lot of trouble to say that Congress can't do that because it is reversing the outcome of a court judgment. It would have been so easy to decide that case by saying, my Lord, it's just referring to particular cases. Well, in fact, the statute at issue in Plout and the reversed Lampf was a generally applicable case to all pending cases. Its problem was it went too far and addressed cases which had gone final. And this Court had held that its authority to adjudicate cases includes the power to conclusively decide them, and so it went too far. But it was a generally applicable statute to all pending cases. This is the exact opposite. In fact, if this suit were dismissed on a technicality and identically situated plaintiffs filed a new one, or these plaintiffs filed a new one and it got a different caption, 8772 would not apply. Kennedy, that's the case involving the timber? Yeah. So Robertson is also a generally applicable statute. That statute said that for the five statutory provisions that were at issue in the Or you could comply with two new provisions, and that would be sufficient for the timber harvesting. But that rule applied not only to those cases, but to any additional cases. Well, as Justice Alito indicated, it actually named cases by number. It didn't reference the case by number? And the Court said it referenced the case by number to identify the statutes that were the basis of the suit. And in fact, subsection G of that statute specifically contemplated additional lawsuits challenging timber harvesting, and the new rule, which said subsection B-3 and B-5 are good enough, you don't have to comply with the other five statutes, would apply to those new lawsuits as well. Where do you get the notion that Congress can only act by generality? It acts all the time on individual matters. I mean, it certainly, you know, grants certain privileges and certain monies on the individual cases. Justice Scalia, our principle is not that Congress can't act on a single bridge, a single parcel of land, a single set of presidential papers. It's that Congress cannot limit its legislation to one and one — only one case such that it dictates the outcome. Why is that? So long as it is not overturning a judgment that the Court has made in that case, as it did in Lamp or whatever the name — was it Plout? I don't think it was Plout. I wrote it. I just don't remember the name. You know how many cases I've written? So long as it doesn't overturn the judgment of the Court, you have to be relying on the fact that it cannot act individually. Is it magic that it — that the individualized law that it enacts happens to affect a particular case? Why is that magic? I think the principle is not whether it happens to affect a particular case. Congress can regularly — will often — problems will come to Congress's attention because of cases, and it may enact a law even thinking about that case. But what Congress can't do is limit its law so that it applies to that case and that case only, because that's a jurisdiction. Because it violates what principle? At the end of the day, I suppose maybe bill of attainder, if there's a real intent to punish, maybe equal protection might work. But I take it you're relying on the separation of powers? Yes, and Article III, because it's the role of the courts to decide individual cases. What do we do about all of the — what used to be when I worked in the Senate Judiciary Committee, every year we would get dozens, maybe hundreds, past dozens of private bills. Right. And I think that's true. There were bills for one person, and moreover, at least some of them, to my recollection, involved that one person saying, I tried to sue, maybe the case is still there, but I was met with a statute of limitations defense, for example, I'd like the money. And we'd vote yes, give him the money, he deserves it, if he does. And I think the history of private bills actually proves our point, because the private bills, the vast majority, as you point out, don't affect a specified case at all. They just simply say, you're entitled to your project. Now, I'm considering the ones that do. Very often, the person sued, he was met with some kind of defense, and he thought — and the Congress might have thought — he should have the money. This is a technical defense. Exactly. And in the context of suits against the government, the traditional context, the government has, the Federal government has expansive authority to waive its defenses, to relinquish its claims, to expand or contract its community. And for in that context, and in that context alone, the government, the Federal government has extraordinary power to determine the course of defense. Now, suppose it's a private person on the other side. I can easily imagine circumstances where to take the money from private B and give it to private A might, for example, take property without due process. It might violate some other provision. But if it doesn't violate some other provision, what in the separation of powers between those unsaid principles distinguishes between taking $10 from the government and giving it to the private person or taking $10 from Joe Smith and giving it to the private person, assuming there's nothing unfair about that? Setting aside other constitutional provisions, Justice Breyer, the difference is this. Congress has full power to waive the United States' defenses, to relinquish its own claims, to contract or expand its immunity. But when it comes to a suit between two private parties, the government can't waive one of those parties' defenses. And courts are the era of the United States' defense. Breyer, pardon? Because those aren't the government's rights. Breyer, because I think you're right. Oh, oh, the defense, the defense happened to be, that worked, an obscure provision in a Court of Claims Act that the government through Congress had once put in. And they decided it would be unfair to apply it now to this person, and so they repeal it in respect to that person, and there's never going to be another like him. Okay? Now, don't play. What I don't want you to do is play on the potential unfairness, because there are other parts of the Constitution there. Assume it's fair to do that. What stops it? I think the answer is when it comes to deciding individual cases, particularly individual cases between private parties. That is the domain of the courts and not Congress. And from the final point of view, it's a matter of the courts. Kagan. Kagan. Could Congress do it the day before a lawsuit was filed? In other words, Congress knows that a lawsuit is going to be filed on a particular subject and just creates the rule for that lawsuit, but the lawsuit hadn't actually been commenced yet? Right. So long as this law is of general applicability, it's going to apply to laws for the future, then it is not going to be. Suppose it weren't. Kagan. Suppose that assets held in Clearstream's Citibank account is subject to execution by Deborah Peterson. Right. And I think that's potentially a harder case for us, but when Congress legislates and the legislation can have no effect but on a lawsuit, I think that that would be covered by this. There's no lawsuit yet. There's no lawsuit yet. Yes. From the time of the framing, State courts with comparable Constitutions repeatedly concluded that it violates separation of powers for their legislatures to enact a law which had an effect on one case and one case only, and that included, for example, lifting the statute of limitations for one case and one case only, because they had said. By one case, you mean not one filed case? Yes, for one example. One person? For one expected controversy in person, correct. And that is cases like Holden v. James and Jones v. Perry. And the point of the matter is, and the holding for those cases is, Congress or in that case the State legislature crosses the line from legislation when instead of enacting a law that has law apart from a single lawsuit, dictates the outcome of that lawsuit. There's no lawsuit yet. If you'd limit it to lawsuit, I'd understand what you're saying. But you're appealing to a much more general proposition, which is that Congress cannot act individually. It must enact general laws. And I just don't agree with that. Well, Justice Scalia, to be clear, our principle is not that it must enact general laws in the sense that it can't enact a law for one bridge or one parcel of land or one set of assets. It's that it cannot enact something that acts on one case and one case only and purports to have no effect, no effect. I'm sorry. But even if there's, I mean, even if one were to disagree with me and think that Holden v. James in 1812 Massachusetts Supreme Court got it wrong, even if one were to disagree, in this case we have a pending case. And that case was going south. Roberts. Roberts. Roberts. I don't understand the fixation on how many cases we're talking about. I thought, I mean, I understand the argument, but at least I think perhaps the more significant concern is what Congress is doing in that one case, which is you have a body of law that tells you when you can attach funds and when you can't, and instead of letting the Court decide that, Congress comes along and says those funds can be attached and they could do it in every case involving Iran. That doesn't seem terribly significant to me. What seems significant is what they're doing in that case. I think that certainly exacerbates the problem when Congress does not merely say new law for this particular case, but says new law, plaintiffs win. That is certainly, certainly across the line. And that is effectively what Congress did here. It enacted a law that said that plaintiffs are able to attach these assets if two conditions are met. But those conditions were clearly met before the law was enacted. There was only one possible outcome. Alito, based on what you've said this morning, I don't really understand the limiting principle of your argument. You've said that the number of cases is not determinative. There could be a great many cases. And you've said that the naming of the cases isn't significant, and it might not even be significant whether the case has been filed yet. So if you put all that together, what is the principle that you're making? So I think for this case, the Court need only rule, because it's never been — it wasn't argued below and it wasn't argued in the brief in opposition that this is anything but one case. The Court could rule simply that when Congress singles out one case and one case only, that crosses the line. Apart from that, our rule — But that seems a little silly, Mr. Lemkin, and that's why you've been saying that the number doesn't matter, and it doesn't matter whether it's the day before or the day after suit. And it doesn't matter if Congress has specified the docket number, because any of those limitations, you would say, well, Congress could do, you know, pretty much the exact same thing, except it would be in two cases, or except it would be without the docket number. And your answers suggest how, you know, a little bit nonsensical those distinctions would be. Let me explain why I wouldn't be concerned and then give you the principle that would govern the remaining cases. I would not be concerned about the limiting principle here, because Congress for 200 years didn't get near this line, because States for almost 200 years have had the exact same principles, and yet there's no history, no debate, no series of cases determining did their legislatures cross the line. The rule that I would give to address that is, simply put, if it's not listing particular cases, then Congress isn't going to cross the line so long as it doesn't and it's unwilling, and it's willing to make it prospective in effect. But if Congress dictates the outcome and there's only one liable defendant and Congress is unwilling to make that prospective, that's dictating how someone comes to cases. It is not legislation as we understand it. The framing generation certainly understood that that's something that purported to act on one case or one case only, or a handful of specified cases cross the line from legislation to judicial decision-making and violated the separation of powers. This Court, likewise, should understand that when Congress purports to act on one case, and if that case is dismissed and then identical plaintiffs file the identical suit and it gets a different case number, yet the law doesn't apply, that law has no existence apart from dictating an outcome in a case. It is not law. Kagan. Kagan. I thought it made a difference that this was in the area of foreign affairs. I had thought that our cases were pretty clear that the political branches, especially the Executive, so I concede that there is a difference there, but that the political branches have a great deal of power in this area, even when it comes to very particular controversies. Right. And I think the government's examples prove exactly why Congress crossed the line here. Now, I'm going to start with sovereign immunity, foreign sovereign immunity, and the history of the Executive determining sovereign immunity and the courts universally respecting it. And that's because sovereign immunity was a matter of comedy, grace, and international politics. And the courts would respect the Executive's determinations because they did not want to embarrass the Executive or create an international incident by assuming jurisdiction where the Executive had told them not to. But State law and the UCC are not matters of grace, comedy, and international politics. They are matters of law for the courts to decide. Kennedy, perhaps they are when the assets are held by a country as to which we have very delicate relations with matters particularly involving dangerous acts allegedly perpetrated by that country. Justice Kennedy, I don't think the Executive branch would submit to the courts a suggestion of State law because foreign affairs principles were at issue and expect a suggestion of State law as opposed to a suggestion of immunity, because the State law is something that has existence apart from what the Executive believes the right to do. Breyer, State law is what would apply perhaps in the absence of a congressional statute. So the President goes to Congress and says, what I would like is you to agree with me about this. We've frozen $14 billion worth of assets of a country with which we are not friendly. There are some people who would like some of that money. We would like to take the assets which are currently being held on the 14th floor of the Howard Building in Chicago and use that. Why? Well, we want to use that because we've worked out that that's the best way to pay people we think should be deserving money, and we don't care about the foreign country in respect to those, but our foreign relations are such that we don't want to get the others involved. Now, what's wrong with that? Justice Breyer, if I understand the hypothetical, the Executive's authority to implement the law. The hypothetical is meant to say just what Justice Kennedy brought up, which is the President, particularly when he acts together with Congress, is given the foreign affairs power to a very great extent of the United States of America. And that foreign affairs power could often involve, for reasons of foreign policy, unfreezing a refrigerator and not unfreezing the stove. So I don't know foreign affairs, but I do know that the President, together with Congress certainly, must have very broad power to decide what assets shall or shall not be kept frozen and not kept frozen. So if the President were given the power to confiscate and distribute these assets, which, frankly, he has not, if he were given that power, that would exacerbate the separation of powers problem, because the Executive branch and the political branches should take accountability for seizing the assets, confiscating them, distributing them, but they cannot, cannot attempt to give it an air of judicial legitimacy by commandeering one case and one case only. So suppose there's – suppose Iran were holding a great many American hostages, and Iran said we'll release these hostages if you stop execution in a suit like this. And suppose Congress thought that that was a good deal and said exactly that. Right. And that is the other authority that the Federal Government invokes, which is, this Court has said, is very circumscribed, which is the claims settlement authority, which is the government can settle the claims of its own nationals if there is an international agreement or accord which it is attempting to implement. But you can't extrapolate from that to the ability to settle the claims, eliminate the claims and defenses of the foreign national, when there is no settlement or agreement or anything of that sort. This is unprecedented in foreign relations otherwise for a statute to say, in this case, in this case only, here's the case.  And I don't think I understood that answer. And you're suggesting that if Congress has a good reason to extinguish these claims, then Congress can do it, but if not, not. No. I think the answer is that the example given, I believe, was the President wanting to do this. But Congress, if Congress passes a statute that basically affects this deal. And if Congress acts on these assets, it has authority to do that. The one thing it can't do is say, this case, this case only, no other case, because that's just not law. That's in the judicature. Kennedy. Well, your answers seem to be that if the President does something, that he has more power, more authority than when the President acting with Congress does something. I would think it would be just the opposite. Well, Your Honor, I think the difficult — if Congress delegates the power to the President, that would be one thing. If Congress purports to, for example, in sovereign immunity, in 200 years, there's no incident that I know of where Congress has said, in this case, in this case only, we've determined whether there should be sovereign immunity. Typically, that is the case. Kennedy. I assume the President signed this legislation. This wasn't a veto override. No. The President signed a very large piece of legislation which included this piece of it. But I think the point of the matter is, if the political branches want to confiscate assets and distribute them, they should take accountability for that. It is a terrible lesson for the American public to say that my sure outcome is not to go to the courts and to get my case there, but to go to the courts and get my case there. Ginsburg. Mr. Lamken, could you tell me about, I mean, when we set up the Iran-U.S. Claims Commission, there were a lot of suits pending that had to be stopped, and that legislation told the courts, you have no choice, you must dismiss these cases. And I think that was Dames and Moore, and that authority under Dames and Moore has been carefully circumscribed to cases where the United States has a settlement agreement or an international accord, and it is implementing the accord by settling the claims of its own nationals. But this is an effort to change the law in favor of its own nationals when there is no international settlement. That circumscribed authority doesn't apply. Kennedy. Kennedy, suppose the executive and the President determines that if you have this legislation, then a settlement will be easier down the road. We're going to flex our muscle. We're going to bring these people to the bargaining table. You can't do that? Lamken, If they want to act on the assets, if they want to act on anything, a particular race, that is one thing, but it is quite another to take one case and one case only and purport to dictate the outcome. If there are no further questions, I would like to reserve the remainder of my time for rebuttal. Roberts. Thank you, counsel. Mr. Olson. Olson. Thank you, Mr. Chief Justice, and may it please the Court. Mr. Lamken's entire case is summed up by the one single pending case. I counted over 25 times that that phrase appeared in Petitioner's brief. Now I hear today that it's not one case. It's — it could be multiple cases. It's a particular outcome. It's particular property. What Congress did in Section 8772 is act pursuant to its core constitutional authority by legislating changes in substantive laws, and Petitioner admits multiple times in its brief, at page 26, 27, 52, 53, and in reply brief, pages 3, 5, 18, that substantive law was changed in this case. And the substantive law that was changed by Congress respected the execution of assets of a foreign sovereign judgment debtor. The judiciary determined in 19 cases that there was liability in these cases by clear and convincing evidence that Iran sponsored terrorist acts. Roberts. Well, the issue doesn't have to do with liability. It has to do with the authority to execute judgment. Yes, it does. Which is a separate matter. Yes, it is a separate matter. But my point is, and the cases that are involved in this litigation are pages 2A and 2B of the red brief appendix. There were 19 cases in which liability was determined, damages were determined, and then consolidated for the purpose of execution. Suppose it were one case. Suppose there were two pending cases, private person, Jones v. Smith, two separate cases, under Federal law where there's a statute of limitations. Could Congress say in Jones v. Smith the statute of limitations is hereby repealed? Yes, Your Honor. And I think this is the Ploutt case to which Justice Scalia was. No, the Ploutt case was a judgment, was altering a judgment after the fact. This is before the case is resolved. The legislation in the Ploutt case involved specific pending pieces of litigation, some of which had not been reduced to a judgment. Some of them had been reduced to a judgment, but that judgment had not been final in the sense that the appeals were not exhausted. And one case in which the appeals had been exhausted and that judgment was final, this Court found that that violated the separation of powers. But that the change of the statute of limitations, and the opinion for the Court in that case by Justice Scalia, points out specifically that Congress can legislate to change an element of a cause of action, to change a rule of evidence that's an impediment to the plaintiff recovering, and can change the statute of limitations. And in footnote 9 of that case, the Court points out there's nothing, there's no problem with particularizing. No, you're correct that there was a substantial discussion about cases that had not been reduced to final judgment, but in my hypothetical, the Congress has two different rules, one for Smith v. Jones, the other for Doe v. Rowe, statute of limitations. Otherwise, the cases are the same. In your view, they can do that. Yes, in my view, and my opponent does not dispute the fact that Congress can change the rule of decision by changing the substantive law while a case is pending. The courts have the obligation to apply. This goes back to the Schooner-Peggy case in 1801. Ginsburg. And in answer to Justice Kennedy's question, there might be a problem, but not separation of powers. I mean, there could be an equal protection issue. Yes, may I answer? Sure. Yes, and we point that out in the brief, that to the extent that there are violations of individual rights, the framers of the Constitution put provisions in the Constitution to deal with that kind of situation, ex post facto clause, the bill of attainment clause, the due process clause, which incorporates principles of equal protection for the Federal Government. But what if, Mr. Olson, Congress passed a law that said, you know, there were a lot of challenges to the statutory interpretation under a particular statute, say the Health Care Act, and it said in any case involving a challenge to the statutory interpretation of the Secretary of HHS of that act, once it finds jurisdiction, the court will enter judgment agreeing with the Secretary's interpretation. I think that comes somewhat closer to the Klein case, where the Court was talking about an area where the Supreme Court, this Court in the McArdle case, and the other case that's mentioned in that decision, where Congress was directing a result that was inconsistent with decisions that this Court had already made with respect to the pardon power. So. Robertson, Well, well, but I mean, this Court has a lot of decisions about how to interpret statutes, and what Congress is saying, in my hypothetical, is, well, that's good for you. We want you to adopt the Secretary's interpretation in every case involving him. Olson, In pending cases, that would be much like the Robertson case, where there were two pending cases involving property out. Roberts, by saying that, you're saying it's okay. Olson, I'm saying that it's okay. I believe it's okay under the circumstances, because what this Court said in Robertson, in a unanimous opinion, was that that type of legislation is, to the extent it is changing the underlying substantive law, that is permissible. Congress may do that. Now, there was. Roberts, I think that's a little surprising. In other words, Congress can pass a statute and then say, whenever the statutory interpretation of the executive branch is challenged, you, Court, will enter judgment in favor of the Secretary. Well, what I think that your hypothetical included two components. One, where the Congress of the United States passed a statute saying that here and after, this particular law will be interpreted in this particular way. That is a change in the substantive law, which in the Miller case. Not in a particular way. They don't care. They don't think this clause ought to be interpreted this way. They're just saying, whenever it's challenged, you, Court, adopt the Secretary's interpretation. We don't know what the interpretation is going to be. We just trust the Secretary more than we trust the courts. Unfortunately, I guess, some might say that Congress does that all the time by providing authority in administrative officials to interpret the statute, and then this Court, under various different provisions that you've decided, say that we will accord deference to that under various circumstances. Roberts There's a difference between causing or affording deference and entering a judgment. Let's make it even clearer. The Court has issued its decision saying it agrees with the plaintiff's interpretation, but the mandate hasn't issued yet. And Congress says, boy, we don't like that decision. They pass a law saying in that case, this is the interpretation you should adopt. I believe that as long as that case is pending and is not final, a la the Plout case and the statute of limitations, we don't like, Congress doesn't like the interpretation or the application of particular statute of limitations, Congress can say we're changing the statute of limitations in a sense by saying, just as you said. Roberts Well, they don't say we're changing them. We just say we want you to enter judgment in this case in favor of the Secretary. Roberts Well, I think that you now moved it further to the point where the Congress is directing with respect to a particular case the outcome between A and B, but to the extent and this is Robertson, to the extent, and that argument was made and that argument was sort of adopted in the Ninth Circuit. But this Court unanimously reversed the Ninth Circuit in that case. The same, essentially the same argument was made if you look at the briefs and you look at the Robertson decision, the same argument was made there that was being made here. And Roberts Just so you understand what I'm concerned about. You know, there are places in the world where courts function just the way our courts do, except every now and then when there's a case that the strongman who runs the country is interested in because a crony is one of the parties or whatever, and he picks up the phone and he tells the court, you decide this case this way, and I don't care what you thought the law was, decide it this way. I'm not sure I see what the difference is here. Well, I respectfully feel that there are many differences. Here, what Congress did, and my opponent concedes that the substantive law of foreign sovereign immunity from execution was changed substantively. And what you said in the Miller case, and repeating what was said in the Robertson and the Ploutt case, is that if the substantive law is being changed, there's no problem under Klein, there's not a separation of powers problem. And so to the extent that, and I agree with you, that this system that we have wouldn't tolerate Congress directing an outcome of a specific case, A must win and B must lose. And there might be implications with respect to the due process clause, the bill of attainder clause, if it involved some sort of punishment, or ex post facto issues in the criminal context. Scalia. What about the equal protection clause? This law applies only to me. Everybody else, it comes out differently. Yes. And to the extent that the Federal Constitution imports equal protection principles in the due process clause, that is correct. But what we have here, we have multiple cases where the judicial function was first of all to decide liability in individual cases, and liability was determined by clear and convincing evidence that the government of Iran sponsored terrorism that killed and maimed American citizens. And then there was a decision by the judiciary in 19 different cases that there were damages to be awarded. Breyer. Is that the ground, the – I'd like to perhaps repeat, but I think pursue what the Chief Justice was bringing up. And the example that I thought of is imaginary. The SEC has a rule, and it says a winning plaintiff in a 10b-5 case cannot attach assets that are in a trust that the defendant has commingled the assets with his wife, who is not a defendant. Can you imagine that rule? I'm just trying to get something like a spendthrift trust. All right. What I'm trying to do is get a spendthrift trust in a Federal context. Now, Congress passes a law, and it says in case 1, 2, 3, 4, 5, the Petitioner can reach the mingled assets. Okay? Period. Constitutional? If not, why not? Scalia. I think that that presents more significant difficulties that are closer to the line that the Chief Justice was pursuing. Breyer. To the extent that this is Robertson, to the extent that that court can interpret that under these circumstances, the law with respect to attaching the trust or commingling assets will be thus, and that's the interpretation that this Court or another court can give to it. Well, you say it's closer to the line. What line? That's what we're trying to ask. The line of directing the outcome in a particular case with respect, and this is Kline, where the Supreme Court was directing the outcome, the interpretation, where Congress was directing the interpretation of the meaning and significance given to a pardon where the court had already decided in a final decision what the outcome of that case would be. Well, I thought your answer to the hypothetical, if you got the hypothetical in mind, all we have is a statute. It says in case 1, 2, 3, you can, in effect, reach the assets, winning plaintiff in the 210b-5, of the Spendthrift Trust. And that's all it says. It doesn't work for the future, it doesn't work elsewhere for the past, it works for this case. Now, that might violate several things, but I want to know what, and does it violate something, and does it violate this principle that they are bringing up about the not deciding for a particular case? Well, and I think there is no not deciding for a particular case principle embedded in the separation of powers concept. There is an instruction to the judiciary to decide a case a certain way that the court talked about in the Ploutt case, but that is not involved. And the court in Ploutt, in that footnote to which I referred, said that there is no constitutional impediment to Congress legislating for a class of one. Breyer. Now, can I do this? Can I say, perhaps, the case I just gave you, Spendthrift Trust, legislation for this one plaintiff, maybe they can't do that. But if we are talking about Spendthrift Trusts in Iran, they can, because that's the foreign affairs power, and because the President and Congress both agree that that's an appropriate exercise of the foreign affairs power. Yes, and that's, I think the government will address that in more detail, but that's we did discuss in our brief, that the power of the President, and this is the power of the President and Congress working together. Congress passed the statute, the President signed the statute, the President blocked the assets. By the way, these assets are in the United States illegally. There has already been fines imposed with respect to the laundering of these funds that put them into the United States. This is a case involving the execution of assets of a foreign sovereign in the United States. You could hardly imagine a case where the power of the Executive and Congress working together with respect to foreign policy and terrorism. As you all said, I suppose this applies to us as well, right? Congress can tell us how to rule on cases pending before us. You know, they have a committee every year at the start of the term. They say, well, what cases are up there? They read the briefs and say, well, we think this one should come out this way. And they pass a law telling us in case number 15-185, the Supreme Court will enter judgment or, you know, more specifically directed to the pending matter. I think that there is probably a point where if the Congress is directing the Court to decide a case a certain way, irrespective, and what you said in the Miller case It doesn't have to say that the Petitioner wins. It sees what the question presented is and then they say, in any case in which, and then read the question presented, you can attach the funds or you can recognize  So I think, Mr. Chief Justice, what you said in Miller, quoting the Robertson case and quoting the Ploutt case, is whatever the precise scope of Klein, because I think that's what you're referring to, later decisions have made clear that its prohibition does not take hold when Congress amends applicable law. Kagan. Kagan.     Kagan.  Kagan.      Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Well, and yes, that would also implicate due process and possibly a takings and other. No, just under the straight separation of powers. I mean, that would be adjudicating if Congress said Smith wins in this case. I think that unless the court feels that as a risk, what Congress is really doing is changing the underlying statute, the substantive provision that ordains that result. If, like. I was giving you a simple hypothetical. I thought that you had already answered this, but maybe not. Congress just says, we see this case, Smith v. Jones, Smith wins. I agree with you, but. That's no good. Agree with her what? Agree that that would implicate concerns about separation of powers. Okay. Of directing a judgment. But to the extent. So if that's right, now Congress takes a look at this case and says, we can't just say Smith wins. And then we just take a look at the case and we say, oh, if you just tweaked the law in this particular way, Smith would win. So we tweak the law in this particular way for this case only. So we don't say Smith wins. We just say we're tweaking the law in this particular way for this case only. Is that all right? Because, yes, because in the Ploutt case, the Court talks about the fact that Congress can enact legislation and it's. Is it the Ploutt case or is it. Roberts. It's not the Ploutt case. It's not even tweaking the law. It's in here, it's saying an issue has arisen in this case of whether or not this case is in this, and in that case, case number 14, whatever, the answer is this. Now, it makes it clear that Smith wins, but they don't just say that. They say you're arguing this in this case. In this case, you have to rule in favor of Smith, and then the judge. Alito. In order to win, you have to have a statute of limitations that comes out this way. And we are legislating with respect to these sets of this set of circumstances that the statute of limitations will be different. And that is Ploutt case. And all this Court has to do is sign on the dotted line. Well, Congress has made a determination by using its power to change something that will affect the outcome of a case. Every time Congress passes a statute, it affects the outcome of future cases and pending cases. The schooner Peggy said that Congress may do that, and that had to do with the treaty, in connection with the pending case. And until that case is final, Congress can change the substantive law. And if that is the import of Justice Kagan's question, which I take it to be, that is within Congress's power. There is no limiting principle. We heard it today. The single pending case was out that was mentioned 25 times in Petitioner's brief went out the window. Now it can be, well, two cases, nine cases, seven cases. What is the limiting principle here? There are limiting principles in the Constitution, specific provisions, but we're talking about separation of powers. And what this Court has said repeatedly is if the legislation can be interpreted as changing the underlying substantive law, that is not, whether it's particularized or not, and even if it's a legitimate class of one, as that footnote in the Klaus case says.  Scalia, I mean, yes, the footnote does say that, but why has the United States  That's what troubled me about the case. You know, when 230 years have gone by and never before has the government done something like this, I wonder, you know, maybe Congress didn't think it had the power to do it. What is, Justice Scalia, something like this? As you did point out in that footnote in the Ploutt case, there have been individual pieces of legislation, special bills throughout the Court's history. There have been changes in the copyright laws that have benefited particular copyright holders or patent holders or Indian claims to Indian tribes and so forth. There is particularized justice. Scalia, it doesn't name a particular case and say for purposes of that case, the law will be thus and such. Do you have a single case where Congress has ever done that? What I would say, Your Honor, is that Congress does all the time with respect to particularized legislation favoring a particular individual or not favoring a particular individual, and it can't be a constitutional principle that if you put a case name in the change of the law, all of a sudden it becomes unconstitutional, or you can do it today, but you can't do it tomorrow because someone filed a lawsuit. Roberts. Thank you, counsel. Mr. Kneedler. Mr. Chief Justice, and may it please the Court. This Court has held since the days of the Schooner Peggy that Congress may amend the law and make it applicable to pending cases, and the Court must give effect to that law. That is what Congress did here, and after the district court made the determinations that triggered the application of this law. Kagan. But usually when we say that, we are talking about amending the law that has effect beyond the particular pending case. And there we say, yes, absolutely, Congress can amend the law, Congress knew that it would affect these pending cases, no problem, because Congress passed something that was within the scope of its legislative powers to amend law affecting this case and others. When you take out the and others, that seems to create a different kind of problem, one where Congress is doing our job rather than its own. I think not, Justice Kagan, and there are several important principles underlying that. One, the footnote 9 in this Court's decision in Plout said that imposing individual duties or liabilities on a particular person, in other words, a particular law, private law, there is no limitation on that in the U.S. Constitution. Counsel for Petitioner has mentioned various State law decisions that have said special bills are not permitted. This Court's decision in Paramino distinguishes those cases and said, yes, some State constitutions have that, but the Federal Constitution, as a matter of separation of powers, has no limitation on special laws. There may be equal protection issues, bill of attainder issues, or special Article I powers like bankruptcy, where there's a uniformity clause and you can't have a statute affecting a particular case or dispute. The second point is, if Congress is able to legislate with respect to a specific dispute, and it's done it, for example, with respect to railroad labor disputes in the main central case, and this Court's decision in Burlington Northern mentioned when there is a labor dispute, Congress comes along and prescribes the results of that dispute. That's a specific law. It's okay. It can't be rendered unconstitutional because there happens to be a suit pending about it. Kagannan напрacted Mr. Kneedler, do you agree with what Mr. Olsen said, that Congress can't just pick a winner in a particular suit, Congress can't say Smith wins, in this case Smith wins? Kneedler Absolutely. The straightforward principle is whether Congress is amending the law or whether Congress is directing it. Kagannan The question that I gave Mr. Olsen, and I'm searching here for an answer, is what happens if rather than just picking the winner, Congress amends the law, tweaks the law, modifies the law in such a way, as to only this case, in such a way that it's absolutely clear that the effect of that will be to pick a winner? Kneedler I think if Congress is amending the law, it can do that. For example, in the Schooner-Peggy, which involved an international treaty in the core of foreign relations, and that's another reason why what Congress did here I think the Court should owe special deference to, but in the Schooner-Peggy, if there had been only one ship, that was a treaty that required each party, the United States and France, to restore ships to the other nation, there was a pending prize case. If there had been only one ship seized in the United States, we don't think any principle in Article III would prohibit giving a factual answer. Kennedy But your answer was there's a difference between amending the law and directing a result in the same case. That seems to me different from what Mr. Olson was arguing. Kneedler No, I think the principle that would prohibit directing the result in a specific case, a separation of powers principle? Kneedler Yes. Kennedy So we are talking so, so if we interpret this matter before us as directing a result in a particular case, the Petitioners prevail. Kneedler If it's directing a result under preexisting law without an amendment, if the Court interprets the law that way, then you would be correct. But Congress amended the law. Kennedy I'm not, you're quite articulate, but I'm not sure I followed. All of a sudden now we find that there is a separation of powers principle, that you cannot direct a result in a particular case. It seems to me that's inconsistent with the argument that your colleague, Mr. Olson, was making. Kneedler No, I think what Klein has come to be understood to stand for is Congress can't direct a result in a case without changing the law. In other words, Congress comes along and says you should find it back this way. Kennedy Suppose they change the law for this particular case. Kneedler It is still an amendment of the law, whether it's for a particular case or a general case. Kennedy Well, I find that a very odd distinction. Roberts Yeah, you're just saying Congress has to be cute about it. They can't say Smith wins. But they can say in the case of Jones v. Smith, where the critical issue is this. We can change that in a way so Smith wins. And don't worry about the law generally because it's just this case. But it's just a cute way of saying Smith wins. Kneedler I don't think that's fair, Mr. Chief Justice, because if Congress, if specificity is not a problem before a lawsuit is filed, it doesn't become a problem when a lawsuit is filed. Roberts It becomes a problem, with respect, it becomes a problem because our job is to decide cases. And before a lawsuit is filed, there's no case. But when there is a case, Article III says that's our job. Their job is to pass laws. Our job is to cite a case. When there's an dispute under one of the laws they passed, that's our job. Kneedler But Congress has amended the law by making assets attachable that would not otherwise have been attachable. Breyer If you want to be cute, Congress has 4,000 ways of being cute, and I can't quite see this Court trying to police those ways. And indeed, I think I'm right in saying that we had hundreds of private bills that were written in all kinds of ways and weren't to benefit individuals, and some of them might have been subject to cases and others not. The unusual thing about this case is it refers to a particular docket number. It refers to the assets in a particular docket number, and we think that's the case. Breyer Can anyone join, that is to say, if a person today, or if there is some person who has the appropriate judgment, an anti-terrorism judgment against Iran, are they perfectly free to join into this case? Kneedler Under the statute, they would be. But if I could just say what's also critical about this case is the foreign relations context in which it arises. This Court has recognized, for example, the ability of the executive to suggest immunity or nonimmunity in individual cases for foreign sovereign immunity. Those are case-specific determinations, and they affect a case. They may require dismissal of the case, just like the Schooner Peggy required dismissal of the case. The rule of law required it. It wasn't Congress telling the Court to dismiss the case. The rule of law that was to be applied that changed the law required dismissal of the case. Sotomayor Mr. Kneedler, why is this different than the Chief Justice's example? Kneedler Because what Congress changed the law, and it did not purport to direct a result under existing law. It changed the law of foreign sovereign immunity by removing a possible defense that central bank funds were not subject to attachment. It changed the law by overriding State's. Sotomayor But for only this case? Kneedler Yes, but, but the. Sotomayor And only this sovereign? Kneedler But as long as Congress is amending the law, there is not a separation of powers problem. There may be an equal protection problem. There may be a bill of attainder problem, something like that. But in terms of the judicial function, the judicial function is the same whether the law is general or whether the law is particular. Breyer Can we, can we, would this resolve the case correctly in your view on your side, were we to say whatever the general principle is, this is a case which is against you, it refers to a case by number, the statute. But for you is the fact that anyone can join and there are hundreds or dozens of such plaintiffs. And moreover, on the other side, it refers to $1.75 billion worth of assets in all kinds of different securities and obligations, and now perhaps in cash, being held in New York. So whatever we're talking about, though the number suggests a particular case, the number suggests far more generality than is true of most cases. Is that true or not true? Kneedler That is certainly true in this case. It is a pool of assets that under this Court's decision in Dames and Moore emphasizes the need for Congress and the President to be able to take hold of assets, whether it's a small amount or not, for two principal reasons, to use as a bargaining chip and also to compensate people who may be injured, and frankly also to sanction. This law does both of those things. It the freezing of these assets is a bargaining chip, and you don't have to bargain or pay all your chips at one time. A bargaining chip may mean you want to use the one bargaining chip, one set of assets this time, and hold off on the other ones. The Executive and President and Congress need great flexibility in the area of national affairs. Sotomayor Does the government have a position on the Respondent's argument that we have an alternative ground to affirm on, and that would be that there these assets were, could be executed under Section 201A? Kneedler We have not taken a position on that. That refers, Tria, and there are a number of issues that were briefed in the court of appeals on that question, so we have not taken a position on that here. We are here to defend this Act of Congress, which we think Congress enacted to address this particular dispute. And if a pending lawsuit would prohibit, would interfere with the flexibility of the Executive and Congress to solve a dispute by disposing of assets to pay particular judgments, that's exactly what the Court feared in Dames and Moore, that pending lawsuits, just because one happens to be pending rather than the law or the executive order being adopted before a lawsuit, should not be able to tie up the Federal government's control over national affairs. Roberts Thank you, counsel. Mr. Lamken, you have 6 minutes remaining. Lamken Thank you. I'd like to begin by going back in history to answer Justice Kennedy's question about a law that says we're going to lift the statute of limitations for one plaintiff and one plaintiff only and nobody else. And the answer to that is early in the nation's history, State court after State court said you cannot do that, it violates separation of powers. And the amazing part is not just that those courts held, but there's no case that can be cited by anyone saying that that is actually consistent with separation of powers from early in the framing, much less a law that goes further and effectively says that not only are we going to lift the statute of limitations, but we're going to change the law, so in this one case, plaintiff wins and defendant loses. That is completely foreign to our legal traditions, it's completely foreign to history, and for 200 years, Congress never once enacted a law like that. That reticence would be amazing if it were not but the fact that Congress understood that that was constitutionally prohibited. Alito Well, could it be that Congress just thinks that's very unfair and that's why they haven't done it? Lamken That is one, but it could have been the same thing in Plout that for 200 years Congress thought it was unfair to get rid of a final judgment and eliminate repose. But the fact of the matter is that the fact that it's also unfair, the fact that there may be individual liberty guarantees associated with it, doesn't mean it's not a separation of powers problem, because separation of powers protects this Court. It doesn't, and it does, when it does so, it also has the effect of guaranteeing fairness and individual liberties for individuals. So separation of powers is important, even if one would think that the law might be unconstitutional on other grounds. It's this Court's authority to say what the law is and to decide cases without Congress passing a law saying for this one case and this one case only. Alito You think the issue here is the protection of the judiciary rather than providing a certain element of equal treatment for the people who are the litigants in the case? I would think it would be the opposite. Lamken In this case, I think it is the rule of law, and the rule of law is something that is the integrity, it is the property, it is something that is critical to the judiciary. Breyer What's lack of integrity if you have an enemy country, let's say, and we've had many wars, you freeze a lot of their assets, there are people who would like to get a hold of some, and Congress gives the executive authority or itself goes through and says we think these people should have this, we think they should have that, they should have the other thing. I mean, maybe it violates equal protection, maybe it violates due process, depending on how they do it, but in principle, what's wrong with exercising the foreign affairs power in that way? If the political branches give that power to the President, that only exacerbates the separation of powers problems with doing it this way, because they do that and they accept the accountability that goes with it, but they cannot try to give it an air of judicial legitimacy by instead taking and commandeering one case pending before the court. Scalia And the law will change to that one case. Scalia Is it one case or 17 cases or 34 cases? Lamken What is your position? My position is at least for one case, and one case only like this one, it is unconstitutional. Scalia 17 would be okay. Lamken The only, the limiting principle I would put on, if it dictates the outcome and there's a limited category of cases against a single out. Scalia Limited category, so 100 cases is a limited category, right? Lamken Single defendant dictates the outcome. Scalia It has to be a single defendant. Lamken Not willing to make it. Scalia There are 100 different defendants, it's okay. Lamken No, 100 different defendants and it's not, and it's willing to make it, yes. I think at some point it crosses the line to being a single out. Breyer A single defendant that represents 100 million people. Lamken At some point, Justice Breyer, the line is between adjudicating a particular case and actually enacting law. And when Congress goes across the line and says this case dictates the outcome. Kagan And when you say dictates the outcome, what do you mean by that phrase? Lamken I mean when Congress enacts the law, there is only one conceivable result, and that is exactly this case. When Congress enacted the law, there was one possible outcome. And that sort of law, which says in this one case, here is going to be the result, is entirely foreign to our legal tradition. It's that kind of law that the framers railed against and that separation of powers was meant to get rid of. Ginsburg If it's going to be a single defendant, you, even, let's assume your argument prevails, your one-case argument prevails. There is still the open question of the TRIA statute, which was decided against you in the district court, right? Lamken Correct. Ginsburg So that would have to be, if you succeeded on the issue that you are raising here, it would have to be returned. Lamken Yes. That would be an issue for the court on remand. It's not within the question presented. It wasn't decided by the court below. It involves complex questions of State law that are important and where the court hasn't heard from the securities bar which would be affected, so that is something that would definitely be an issue for remand. But when it comes to 8772, there is only one result, and that's the plaintiff's win. There is nothing in this Nation's history, and the lesson it teaches the populace is if you want to win your case in court, don't hire a lawyer, hire a lobbyist. Don't seek recourse in the judiciary. Seek recourse before Congress for your private dispute. This Court should not lend its credibility, it should not lend its judgment to that judicial tradition. Thank you. I ask the judgment to be reversed. Roberts. Thank you, counsel. The case is submitted.